## MASSACHUSETTS BONDING & INS. CO. v. STEELE. (No. 483.)*

Court of Civil Appeals of Texas. Waco. March 10, 1927.

Rehearing Denied April 7, 1927.

1. **Schools and school districts** ☞81(2)—"Labor" in statute requiring public building contractors' bonds to pay laborers includes all bodily or intellectual exertion for other purposes than pleasure (Rev. St. 1925, art. 5160).

"Labor," as used in Rev. St. 1925, art. 5160, requiring public building contractors to execute bonds for prompt payment of all persons supplying labor, includes all bodily or intellectual exertion done for purpose other than pleasure derived from performance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Labor.]

2. **Schools and school districts** ☞81(2)—Superintending construction, keeping laborers' time, etc., is "labor," within statute requiring public building contractors' bonds to pay laborers (Rev. St. 1925, art. 5160).

Superintending construction, keeping other laborers' time, paying them, promptly providing material when needed, and attending to other things naturally arising in construction of large public building is "labor," within Rev. St. 1925, art. 5160, requiring contractor to execute bond for prompt payment of all persons supplying labor.

3. **Schools and school districts** ☞81(2)—Superintending public work for contractor unable to do so is "labor," within statute requiring bond to pay laborers (Rev. St. 1925, art. 5160).

Labor, performed in superintending public work or improvement for contractor, unable to superintend it in person because of its proportions or other work or duties, is within protection of Rev. St. 1925, art. 5160, requiring bond from contractor to pay persons furnishing labor.

4. **Schools and school districts** ☞81(2)—Date and legality of contractor's assignment to building construction superintendent held unimportant, in latter's action on bond to pay laborers.

Date and legality of assignment from contractor to one superintending construction of school building held unimportant, in latter's ac-

tion on contractor's bond to pay laborers; being important only as evidence of plaintiff's employment by contractor and terms thereof.

5. **Schools and school districts** ☞81(2)—Evidence held for jury, in action on school building contractor's bond for compensation for superintending construction.

In action against surety on school building contractor's bond for compensation for labor performed in superintending construction, contractor's contracts with school trustees and plaintiff, bond sued on, and plaintiff's testimony as to what he was employed to do and did, held sufficient to take case to jury.

6. **Schools and school districts** ☞81(2)—Evidence of contractor's agreement to pay building construction superintendent stated sum for 4 months' service held insufficient for jury, in action on contractor's bond.

In action on school building contractor's bond for compensation for labor performed in superintending construction, evidence held insufficient to take to jury question whether contractors agreed to pay plaintiff stated sum for 4 months' service.

7. **Schools and school districts** ☞81(2)—That construction superintendent ceased work before completion of school building, after working less than period for which he claimed agreed compensation, held not to authorize instructed verdict against him in action on contractor's bond.

That superintendent of school building construction, after working nearly 4 months by mutual consent of all concerned, ceased to perform such service before completion of building, held not to require or authorize instructed verdict against him, in action on contractor's bond for compensation, though evidence was insufficient to take to jury question as to agreement to pay him stated sum for 4 months' service, but to reduce recovery according to time he failed to perform service required to entitle him to such sum, if properly pleaded and proved.

Appeal from District Court, Limestone County; A. M. Blackmon, Judge.

Action by L. L. Steele against the Massachusetts Bonding & Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Burgess, Burgess, Sadler, Chrestman & Brundidge, of Dallas, and C. S. Bradley, of Groesbeck, for appellant.

I. W. Keys, of Mexia, for appellee.

STANFORD, J. Suit by appellee against appellant on a surety bond, executed by appellant as a surety for Sloan & Spoonts, contractors, to secure the faithful performance by said contractors of their contract with the trustees of the public schools of the city of Mexia in the erection of a school building, as per the terms of said contract, and for the payment of all labor in the prosecution of said work. Appellee claimed he had performed labor for said contractors in the con-

struction of said building, for which he had not been paid, and that appellant was liable for same on said surety bond. In response to special issues, the jury found:

(1) That L. L. Steele was not a partner or member of the firm of Sloan & Spoonts, in the sense that he, Steele, was to share in the profits, if any, or be liable for the loss, if any, in the contract for the building of the Mexia high school building.

(2) That the firm of Sloan & Spoonts, contractors, did contract and agree to pay L. L. Steele $2,500 for his services for the term of four months in superintending and overlooking the construction of the Mexia high school building.

(3) That no part of the $2,500 ordered given by Sloan & Spoonts to L. L. Steele was understood to be in payment of or as compensation for any services other than superintending the construction of the Mexia high school building.

On said answers of the jury the court entered judgment for appellee. This is the second appeal in this case. For opinion on former appeal, see Massachusetts Bonding & Ins. Co. v. Steele (Tex. Civ. App.) 276 S. W. 470.

Under appellant's first assignment and proposition thereunder submitted, appellant contends the court erred in refusing to sustain a general demurrer to appellee's petition, in that the allegation of the services rendered negatived the fact that he performed labor under the terms of the statute and bond. There is no allegation that appellee furnished any material in the prosecution of the work, so the only question is whether or not his allegations are sufficient to show he furnished labor. Our statute provides, in effect, that a contractor who undertakes to construct under contract any public building or work shall be required to execute the usual penal bond, "with the additional obligation that such contractor shall promptly make payments to all persons supplying him or them with labor * * * in the prosecution of the work provided for in such contract." Rev. St. 1925, art. 5160. The construction contract provided that the contractor would furnish a good and sufficient bond, etc., "and said bond shall be further conditioned that said contractor shall promptly make payments to all persons * * * supplying said contractor with labor * * * in the prosecution of the work provided for by the contract," etc. By the provisions of the bond, the contractors and surety "are held and firmly bound unto the trustees, independent school district, Mexia, Tex., as well as to all persons * * * who may perform labor on the work," etc., and said bond obligates the contractors and surety to "promptly make payment to all persons supplying him or them with labor * * * in the prosecution of the work," etc., and said bond obligates the contractors and surety to "promptly

make payments to all persons supplying him or them with labor * * * in the prosecution of the work provided for in such contract," etc. Appellee pleaded as follows:

"Plaintiff would further show to the court that he was employed by the firm of Sloan & Spoonts to take charge of the construction of said school building for a period of approximately 4 months, and under the terms of his employment plaintiff was to pay all bills incurred by the firm of Sloan & Spoonts, see that any and all material purchased was kept on hand ready for use in the construction of said building, and to see in general that the work progressed as fast as possible toward the completion of said building."

[1] The exact question here involved is, Was the labor required of appellee, as alleged, labor in the prosecution of the work as provided for in our statute, also in the contract and bond sued upon? The term "labor" is a very broad term, with a well defined, understood, and accepted meaning, and includes all bodily or intellectual exertion done for a purpose other than the pleasure derived from the performance. 35 C. J. 922. Had our Legislature intended to use the word "labor" in a restricted sense, or with reference to a special class of endeavor, we think a qualifying word or phrase would have been used in connection with the term.

[2] It is alleged appellee was employed to take charge of the construction of said building, pay the hands, look after the material, etc. We think, clearly, that superintending the construction, keeping the time of the other laborers, having the money ready and paying them promptly, providing the material and having it ready when needed, and attending to the things too numerous to mention that will naturally arise in the construction of a building of the proportions of the one here involved, is labor within the meaning of our statute, and is just as essential in the prosecution of the work as is the work of the brickmason or carpenter who labors upon said building.

[3] But appellant contends the work performed by appellee does not come within the provisions of the statute, in that it was work that should have been performed by the contractors, and cites some authorities to sustain said contention, but we do not think this proposition sound. A public work or improvement might be of such proportions that the contractor could not superintend such work, or he might by reason of other work or other duties be unable to superintend the work in person, and in such case, where the contractor employs another to superintend, and said employee does perform labor in superintending, in the prosecution of such work, there is no sound reason why such labor should not be protected. The statute provides, in effect, that all labor in the prosecution of the work shall be protected, as do

also the contract and bond in this case. The contractor is not required to do any part of it. Labor performed by the contractor, whether it be laying brick or superintending, is not protected, not because it is not labor in the prosecution of the work, but because no obligation is thereby created on the part of the contractor. It is debts incurred by the contractor for labor in the prosecution of the work that are protected. Article 5160, Revised Statutes 1925; Hess & Skinner Engineering Co. v. Turney (Tex. Civ. App.) 207 S. W. 171; Hess & Skinner Engineering Co. v. Turney, 110 Tex. 148, 216 S. W. 621; Southern Surety Co. v. Callahan (Tex. Civ. App.) 283 S. W. 1098; Southern Surety Co. v. Guaranty Bank (Tex. Civ. App.) 275 S. W. 436; United States Fidelity Co. v. Henderson County (Tex. Com. App.) 276 S. W. 203, also Id. (Tex. Ciy. App.) 253 S. W. 835; United States v. Lowrance (C. C. A.) 252 F. 122; City of Portland v. New England Co., 96 Or. 48, 189 P. 211; Carter County v. Hill Const. Co., 143 Tenn. 649, 228 S. W. 720; Bircker v. Rollins et al., 178 Cal. 347, 173 P. 592. This assignment is overruled.

[4] Under several assignments, appellant contends the trial court erred in overruling its general demurrer to plaintiff's petition as based upon the assignment from the contractors to plaintiff. If this suit had been against the trustees, it would have been proper to base such suit upon said assignment and order of date October 12, 1922. Appellant was in no way a party to said instrument, and said instrument of itself created no liability against appellant. Appellant's liability, if any, arose by reason of its execution of the bond to secure the payment for labor performed in the prosecution of said work, and by reason of appellee's performing such labor under his employment by the contractors. As we understand appellee's pleading, this is the theory adopted by him. His suit is not based upon said instrument, but is based upon the bond executed by appellant as a surety, and said instrument is important only as evidence for the purpose of showing that appellee was employed by the contractors to perform labor on said building, and the terms of such employment, and, this being true, the date of such instrument and the legality of it as an assignment are unimportant. We overrule all assignments raising the questions here discussed.

[5] Under other assignments, appellant contends the court erred in refusing to direct a verdict for the defendant, and especially as to appellee's cause of action as based upon the bond for labor performed. Appellee introduced in evidence the contract between the contractors and the trustees of the school district, which contract, in substance, required, among other things, the contractors to make prompt payment for all labor performed in the prosecution of said work, and required said contractors to give bond with proper sureties for the faithful performance of said contract, as provided by statute. Appellee also introduced in evidence the bond given as required by said contract and also by statute, which bond was signed by appellant as a surety, and which secured the prompt payment of all labor performed in the prosecution of said work. Appellee also put in evidence the contract executed by the contractors, employing appellee to perform services in connection with the erection of said school building, and specifying the compensation he was to receive therefor. Appellee testified:

"I was to go out on the high school building and oversee the job, to buy the material and pay all debts, to see after the running of the building, and to see that the material was all there. * * * While there I wrote checks, bought material, and signed checks, and went to the bank and borrowed the money necessary to pay the pay roll. I signed the notes as agent for Sloan & Spoonts. In general, I tried to do what Sloan & Spoonts would have done, had they been there, in regard to the work."

The jury found that no part of the $2,500 ordered given by Sloan & Spoonts to L. L. Steele was understood to be in payment of or as compensation for any services other than superintending the construction of the Mexia school building. As stated above, we think the superintending of the construction of said building by appellee was labor performed by him in the prosecution of said work, within the meaning and intention of article 5160 of our Statutes, and the contract and bond given in pursuance thereof. We think the court was correct in refusing to instruct a verdict for appellant and in submitting the case to the jury.

[6] Under appellant's sixteenth proposition it contends the court erred in refusing to direct a verdict in its favor on the ground that appellee had failed to prove performance of the contract with the contractors, and, under appellant's twentieth, twenty-first, twenty-second, and twenty-third propositions, it contends the court erred in submitting special issue No. 2, inquiring of the jury whether the contractors agreed to pay appellee $2,500 for his services for the term of 4 months. Appellee's contract with the contractors, in which they agree to pay appellee $2,500, was dated October 12, 1922, and appellee began work under said contract on the same day; so, at the time the contractors executed said contract agreeing to pay appellee said $2,500, they owed him nothing and said amount was promised for services to be rendered in the future. There is nothing in the contract to indicate the length of time appellee was to work. Spoonts, the member of the firm with whom said contract was made, was dead. Appellee was the only witness who testified

what the understanding was as to the length of time appellee was to work, and on this point he testified as follows:

"I was to get this $2,500 for working that 4 or 5 months. The order does not say anything about that, but that was the distinct understanding. We thought the job would be finished in 4 or 5 months when I went out there. * * * My contention is that I was to get this $2,500 for my services that I rendered. * * * At the time I was employed by this firm of Sloan & Spoonts, there was something said about my not working any longer than this period of time. Mr. Spoonts asked to go out on the job, stating that the building would probably be finished in 4 or 5 months, and agreed to pay me $2,500; and it was further agreed that, if the building was not completed at the end of that time, they were to pay me more money."

One of the duties of appellee as general superintendent was to rush the building to completion as soon as possible. It is clear the parties contemplated that appellee would superintend the work until completed. It is also clear the parties did not know just how long it would take to complete the work, but thought it would be completed in 4 or 5 months, and appellee testified in this connection:

"It was further agreed that if the building was not completed at the end of that time (4 or 5 months) they were to pay me more money."

It is perfectly clear, under appellee's evidence as applied to the contract, if the building had been completed in 4 months he would have been entitled to the $2,500 for said 4 months' services, but if it took 5 months, then he was obligated to serve 5 months for said $2,500, and if it took more than 5 months, then he was to be paid more money. The building was not completed for nearly a year. Appellee worked from October 12, 1922, to February 7, 1923, lacking 5 days of being 4 months. Special issue No. 2 is as follows:

"Did the firm of Sloan & Spoonts, contractors, contract and agree to pay L. L. Steele, $2,500 for his services for the term of 4 months in superintending and overlooking the construction of the Mexia high school building?"

[7] There is no evidence in the record that he was to receive such sum for 4 months' service, unless said building was completed within said 4 months, and the record is conclusive it was not completed until about 10 months after said contract was executed. Appellee testified:

"My contention is that I was to get this $2,500 for my services that I rendered,"

—but this contention of his has no probative force, in view of his evidence stating explicitly the time he was to perform service for the $2,500. The evidence was not sufficient under the undisputed facts to raise any issue as to whether the contractors agreed to pay appellee $2,500 for 4 months' service, and the court was in error in submitting such issue to the jury. But as this suit is not based on the contract between appellee and the contractors, but is based on the bond executed by appellant for labor furnished in the construction of said building, and said contract, aided by parol, is important only as a matter of evidence, and in view of the fact appellee did not voluntarily quit said work, if such is the case, before the building was completed, but ceased to perform said service because his employers were unable to go further with it and the work was taken over by the bonding company, the fact that appellee, after working 4 months less 5 days, by mutual consent of all parties concerned, if such is the case, ceased to perform said service, leaving the building not completed, did not require or authorize an instructed verdict against him, as contended by appellant under its sixteenth proposition, but all of said matters, if properly pleaded and supported by evidence, should operate to reduce the amount of his recovery according to the time he failed to perform the service he was obligated to perform in order to entitle him to said $2,500. We overrule appellant's sixteenth proposition, but sustain its twentieth, twenty-first, twenty-second, and twenty-third propositions.

Under appellant's seventeenth and eighteenth propositions it contends appellee's cause of action was barred by limitation. We overrule this contention. The question of limitation was fully discussed and decided against appellant on the former appeal of this case. Massachusetts Bonding & Ins. Co. v. Steele (Tex. Civ. App.) 276 S. W. 470.

We have considered all of appellant's assignments, and, except as above stated, find no error. For the error above pointed out, the judgment of the trial court is reversed and remanded.