## DELAWARE DREDGING CO. et al. v. TUCKER STEVEDORING CO.

Circuit Court of Appeals, Third Circuit.
March 15, 1928.

No. 3682.

**1. United States ⬅══74½—In action against contractor and surety for services furnished subcontractor, court's application of subcontractor's payments to plaintiff on oldest and unsecured accounts, rather than account in issue, held not error (40 USCA § 270).**

In action on bond given under Act Feb. 24, 1905 (40 USCA § 270), against contractor excavating channel in river for United States, to recover for services furnished subcontractor, court did not err in applying payments from subcontractor to plaintiff on oldest and unsecured accounts, rather than account on which defendant was liable.

**2. Payment ⬅══38(2)—Debtor's uncommunicated intention as to application of payment to creditor does not constitute "application" by him.**

Mere uncommunicated intention or belief on part of debtor as to application of payment to creditor is not such an appropriation as constitutes "application" by him.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Application.]

**3. Payment ⬅══38(1)—Debtor may control application of payments to creditor.**

Debtor, making payment to creditor, may control application of such payment.

**4. Payment ⬅══39(1), 41(1)—Where debtor fails to make application of payments, creditor may do so, and, if he fails, court must make the application.**

Where debtor, making payment to creditor, fails to make application, power to do so devolves on creditor, and, if neither does so, then court must make application, being guided by sound discretion.

**5. Payment ⬅══46(1)—Court, making application of debtor's payment, should apply it to unsecured debts, or those for which security is most precarious.**

Where court makes application of debtor's payments to creditor, equity requires it to apply payment to debt for which security is most precarious, and to unsecured debts.

**6. Payment ⬅══46(2)—Court will apply payment made on open account to oldest account, regardless of rule requiring application to unsecured, rather than secured, debt.**

When payment has been made on open running accounts, and has not been applied to any particular account by either debtor or creditor,

court will apply it to oldest account, even though such application runs counter to rule that payment should be applied to unsecured, rather than secured, debt.

**7. United States ⊜⇒67(2)—Surety of contractor excavating river channel for government held not liable for meals furnished subcontractor's employees, where furnishing of board was not indispensable to work (Act Aug. 13, 1894, as amended by Act Feb. 24, 1905 [40 USCA § 270]).**

In action on bond given under Act Aug. 13, 1894, as amended by Act Feb. 24, 1905 (40 USCA § 270), for protection of persons furnishing materials and labor for construction of public works, contractor, excavating river channel for government, *held* not liable for meals furnished by plaintiff to subcontractor's employees, in absence of special circumstances showing that furnishing of board was indispensable to and an integral part of work.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; William H. Kirkpatrick, Judge.

Action by the Tucker Stevedoring Company against the Delaware Dredging Company and another. Judgment for plaintiff, and defendants bring error. Affirmed.

Howard M. Long, of Philadelphia, Pa., for plaintiffs in error.

Willard M. Harris, of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. On February 6, 1922, the Delaware Dredging Company entered into a contract with the United States for the excavation of a channel in the Delaware river along the water front of Camden N. J., in accordance with certain specifications contained in the contract. The dredging company gave a bond to the United States for the faithful performance of the work, with the Fidelity & Deposit Company of Maryland as surety.

Subsequently a portion of the work to be done under the contract was sublet to the Canal Construction Company. In May, 1922, the construction company and the Tucker Stevedoring Company entered into a verbal contract whereby the Tucker Company was to furnish tugs to tow mud scows to and from the canal company's dredges at. the rate of $1,700 per month. Payment for each month's work was to be made before the 10th day of the succeeding month, and upon failure to do so the Tucker Company had the right to terminate the contract.

The Tucker Company did the towing during the month of May, and until June 19,

1922, when it removed its tugs and terminated the contract for failure on the part of the canal company to pay for the month of May in accordance with the contract. When the Tucker Company stopped work on June 17th, the canal company owed it:

For tugs and towing ............... $2,663.33
For meals furnished to employees of canal company ................... 69.67

This suit was brought to recover the sum of these two items, $2,733, by the Tucker Company, as use plaintiff, under the Act of February 24, 1905 (40 USCA § 270), "for the protection of persons furnishing materials and labor for the construction of public works." The case was tried to the court without a jury, which entered judgment for the Tucker Company for the full amount demanded, and the case was brought here on writ of error of the dredging company and Fidelity Company.

[1, 2] The principal issue relates to the application of two payments made by the canal company to the Tucker Company. On June 30, 1922, and following, the canal company owed the Tucker Company $8,600.85, which included the $2,733 demanded in this suit. On October 25, 1922, the canal company paid the Tucker Company $1,000, and another $1,000 on December 19, 1922. The canal company did not request that these payments be applied to any specific account, and so the Tucker Company simply gave the canal company credit on its open. running account. In July, 1923, the canal company went into bankruptcy, and so it becomes material as to which account the payments may be applied.

The defendants, plaintiffs in error here, contend that under these circumstances the law applied these payments to the amount due on the contract here involved; that the indebtedness on the contract, therefore, is only $733, including the meals, and the court erred in entering judgment for the full amount. Defendants further say that the canal company actually' applied those payments to the work done under this contract. On January 10, 1923, Mr. Charles Longnecker, treasurer of the canal company, wrote to the Delaware Company relative to these two payments and said: "It was understood that these payments should apply on an open account, the amount of which was $2,733.33."

This doubtless refers to the account in question, but it is admitted that nothing was said or done when the payments were made, whatever the intention might have been, to earmark those payments to any particular account. As the learned trial judge said:

"A mere uncommunicated intention or belief on the part of a debtor as to the application of a payment is not such an appropriation as constitutes an application by him."

The Delaware Company informed the Tucker Company of the contents of Mr. Longnecker's letter, but the Tucker Company did not answer it, and was not obliged to do so. Leach & Co. v. Peirson, 275 U. S. 120, 48 S. Ct. 57, 72 L. Ed. —— (decided November 21, 1927). We think the District Court was right in holding that no application was made by either debtor or creditor.

[3-6] A debtor may control the application of his payments. If he fails to make the application, the power to do so devolves upon the creditor. If neither does so, it becomes the duty of the court to make the application, and in doing this it must be guided by a sound discretion. It is equitable that the entire debt be paid. Equity and wise discretion require that the court should apply such a payment to the debt for which the security is most precarious and to unsecured debts. Field v. Holland, 6 Cranch (10 U. S.) 7, 26, 3 L. Ed. 136; McGillin v. Bennett, 132 U. S. 445, 10 S. Ct. 122, 33 L. Ed. 422; Johnson's Appeal, 37 Pa. 268; Smith v. Brooke, 49 Pa. 147; Ege v. Watts & Parker, 55 Pa. 321. Courts, in their effort to administer law and equity wisely, have established another rule, which has become general: When a payment has been made on open, running accounts, and has not been applied to any particular account by either debtor or creditor, the court will apply it to the oldest account. Sometimes this rule runs counter to the rule that the payment should be applied to the unsecured rather than the secured debt. In such cases the rule requiring the payment to be applied to the oldest debt prevails. Pierce v. Sweet, 33 Pa. 151; Pardee v. Markle, 111 Pa. 555, 5 A. 36, 56 Am. St. Rep. 299. Especially is this true when, as here, the application of this latter rule also favors the creditor. The accounts to which the court applied the two payments in question were both oldest and unsecured.

[7] The second question raised here relates to the account of $69.67 for meals furnished the canal company's employees. The District Court said that: "The furnishing of meals by the Tucker Company to the canal company's men was an integral part of the work covered by the Delaware Company's contract with the United States, and necessarily involved in it." The following is the only reference in the contract and specifications relating to meals:

"If the contractor maintains on this work an establishment for the subsistence of his own employees, he shall, when required, furnish to inspectors employed on the work, and to all United States agents who may visit the work on official business, meals of a quality satisfactory to the contracting officer. The meals furnished will be paid for by the United States at the rate of 30 cents per person for each meal. Each bidder will state in his proposal whether or not his plant will have the facilities for furnishing the accommodations and meals required by this paragraph."

This provision refers to the furnishing of meals to United States inspectors and United States agents who visit the work on official business, and the United States agreed to pay for such meals at 30 cents per person for each meal. The Delaware Company and surety are not liable for such meals.

The plaintiff is not seeking to recover for meals furnished to United States inspectors and agents, but meals furnished to scowmen of the canal company. These are not expressly provided for in the contract or bond, which was conditioned for prompt and full payment "to all persons supplying it [contractor] labor or materials in the prosecution of the work." Does the furnishing of meals come within this provision? The Supreme Court has repeatedly refused to limit the application of the Act of August 13, 1894 (28 Stat. 278), as amended by the Act of February 24, 1905 (33 Stat. 811 [40 USCA § 270]), under which this suit is brought, to labor and materials directly incorporated into public work. Title Guaranty & Trust Co. v. Crane Co., 219 U. S. 24, 34, 31 S. Ct. 140, 55 L. Ed. 72; United States Fidelity Co. v. U. S., 231 U. S. 237, 34 S. Ct. 88, 58 L. Ed. 200; Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206.

But there must be special circumstances showing that the furnishing of board was indispensable to and an integral part of the work and necessarily involved in it, before it can be said that meals and board are materials furnished "in the prosecution of the work." United States v. Kimpland (C. C.) 93 F. 403; Brogan v. National Surety Co., 246 U. S. 257, 261, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776. Here there were no special circumstances, showing that the men were engaged in work located "in a comparative wilderness," far from any settlement, so that the laborers had to be boarded there. There is nothing to show that the furnishing of these scowmen with meals was indispensable to the work, formed an integral part of it, or was necessarily involved

in it. It follows that the plaintiff is not entitled to the $69.67 for furnishing meals to the scowmen of the canal company.

The judgment must be reversed, unless the plaintiff files a remittitur for this amount; but, upon its filing such remittitur, the judgment will be affirmed.